## Rusher *v.* The State.

1. The well established rule that independent facts discovered in consequence of a constrained confession made by a prisoner are admissible in evidence against him, is of force in this State unless it appears that criminal violence was used in procuring the confession or making the discovery. And where such independent facts are admissible, so much of the prisoner's acts and declarations as are necessary to account for the discovery and explain the manner of it are admissible also; but solely for this purpose. They count for nothing as confessions, and as such are to be wholly disregarded.

2. Where counsel for the accused objected to evidence of an incriminating admission on the ground that the same was made under coercion, and at the same time stated they wished to interrogate the State's witness to show that the accused had been whipped by the witness and others, and the State's counsel replied that the "confession" was not sought but merely the information disclosed by it, after which there was no further effort to examine the witness as to the alleged whipping and no further objection to

the admissibility of the evidence, failure to reject the same was not error, there being no proof by any witness that the prisoner was whipped or that any criminal violence upon him was committed.

3. The evidence as to the identity of the money stolen, and in other respects, was sufficient to warrant the verdict of guilty, and there was no error in denying a new trial.

June 18, 1894. Argued at the last term.

Indictment for burglary.   Before Judge McWHORTER. Elbert superior court.   March term, 1893.

F. H. COLLEY and M. P. REESE, for plaintiff in error. W. M. HOWARD, solicitor-general, *contra.*

BLECKLEY, Chief Justice.

The indictment was for burglary, and Rusher, one of the accused, was found guilty of larceny from the house. Money was stolen from the store of J. H. Jones & Co., in Elberton.   It was stolen at night, and during the night most of it was found concealed in the grass and somewhat buried in the ground, a few hundred yards from the store.   The circumstances attending the finding were detailed by the witness J. T. Heard, a part of whose testimony, according to the brief in the record, was as follows: "Mr. Chedel, Mr. Boyd, my brother, Jim Rusher, Cas Butler and myself were present when this money was found.   The defendant Jim Rusher was present.   He kept telling us we would find the money if we would keep looking.   He said it was right there near by, and if we would keep looking we would find it; and we found it where he said it was.   He said he would go with us where the money was found.   We had him under arrest.   He could not have gotten away.   We carried him down there with us. . .   The defendant said he would take us down there; he carried us; we did not know where to go; he was the man to show us where to go."   Question: "You gentlemen had used some coercion on him, hadn't you?"   Answer: "I suppose you might call it that."   The act of the accused

in conducting the witness and his associates to the place where the money was found, and his declarations while the search was in progress to "keep looking for the money up by the fence; it is there somewhere," were objected to as incompetent evidence, on the ground that the act was done and the declarations were made under coercion. The declarations do not appear in the brief of evidence precisely as they are recited in the motion for a new trial, but this variance may be disregarded or treated as immaterial. They were not offered and received as admissions or confessions of guilt, but as information which guided the search and conduced to the discovery of the money. Nothing said by the accused either affirmed or denied guilt, or was an admission that he was the person by whom the money was' concealed. All he said was confirmed by the physical fact of the presence of the money at the place designated, and by finding it there through the search conducted as he directed.

1. The independent fact that the money was found was certainly admissible in evidence, and there can be no doubt that it has been a rule of law long and well established that not only such a fact, but acts and declarations of the accused, in so far as they explain and are necessary to account for it, whether the acts or declarations be voluntary or involutary, may be received for this purpose. 1 Phil. Ev. 116; 2 Stark. Ev. 37–38; Roscoe's Cr. Ev. 51; 1 Gr. Ev. §231; Whar. Cr. Ev. §678; 3 Am. & Eng. Ency. Law, 481; *Jones* v. *The State*, 75 *Ga.* 825; *Daniels* v. *The State*, 78 *Ga.* 98. Such ·evidence when admitted for this sole purpose is not treated as proving a confession, but as being a part of the *res gestœ* of the independent evidentiary fact. If what the accused did and said was the result of coercion, however mild, it would have been inadmissible had not the search which was made for the money re-

sulted in its discovery. The discovery being a material and relevant fact, what would contribute to account for and explain it would be relevant also, not for its own sake, but for its explanatory function and value. It may be that the whole of the evidence would be inadmissible according to the true meaning and spirit of the rule, if it appeared that criminal violence, such as whipping, was used in coercing the act or extorting the speech which led to the discovery. The fruits of physical torture as distinguished from those of mere fear, it would seem, ought to be unavailing. The honor and decency of the law would seem to be involved in rejecting them. The law ought to hold out no encouragement to violent and lawless men to commit crime for the sake of detecting a previous crime and bringing the offender to punishment. The law should never suffer itself to become an enemy or antagonist to its own reign. The multiplication of crimes as a remedy for crime would be a very absurd and disastrous public policy, and we think courts should not lend themselves to the advancement of any such policy, unless they are compelled to do so by statute or some authority equally obligatory.

The constitutional provision that "no person shall be compelled to give testimony tending in any manner to criminate himself" (Code, §4998) does not displace or repeal the rule of law which we have been considering. It is manifest that the letter of the provision does not have that effect, for the subject-matter of the common law rule is not the giving of testimony by the accused, but the admissibility in evidence of facts, acts and declarations known to and detailed by other witnesses. It is contended, however, that the spirit of the constitutional provision extends to anything which a person under accusation, or afterwards accused, is coerced to do or say out of court before trial or in court during the

trial.    There certainly is some authority tending to support this position.    Taken in its full breadth, we deem the contention unsound.    So far as we know, there is nothing in our own Reports which goes to the extent of excluding the evidence where a substantive pre-existing physical fact bearing directly on the fruits of the crime has been discovered by means of exciting hope or fear. In *Day* v. *The State*, 63 *Ga.* 667, the discovery made was that the prisoner's shoe fitted a certain track.    In the present case, physical facts previously existing became known; the discovery was of existing facts, all of which had been voluntarily created by the accused or some one else as a sequel to the *corpus delicti*.    Knowledge by competent witnesses, however acquired, so that it be real and accurate, is of some evidentiary value, irrespective of the means of acquisition, and there would seem to be no injustice against any one in using it in evidence, unless it was acquired by criminal violence, or unless some rule of public policy would be violated by so using it, as in the case of confidential communications to counsel, etc. It is obvious that to compel a person while on trial to perform some act or make some prejudicial discovery in the presence of the court and jury, as was done in *Blackwell* v. *The State*, 67 *Ga.* 76, is much more in the nature of compelling him to give testimony against himself, than is coercing him to do or say something out of court which leads to the knowledge on the part of witnesses of some independent fact directly connected with the criminal transaction as a whole, and which has an evidentiary significance of its own, without reference to the means or method of discovery.    It has been held that a person while in custody may be subjected to a personal search and examination against his will, in order to discover upon him evidences of his criminality. *Woolfolk* v. *The State*, 81 *Ga.* 551.    And see *Franklin* v. *The State*, 69 *Ga.* 36; *Drake* v. *The State*, 75 *Ga.* 413.

If this may be done, it would seem no less allowable for those having him in custody to order him to point out the place where he has concealed stolen money or property and induce him to do so either by operating on his hopes or his fears, provided they use no unlawful violence. It must be remembered that confessions as such are equally inadmissible when they are the fruits of hope as when they are the product of fear; and certainly it could not be successfully contended in this case that if the discovery of the stolen money had been made by exciting hope of impunity, this would have been any impediment to proving the discovery and how it was brought about, including the acts and sayings of the accused.

What coercion was used we are not informed. As nothing to the contrary appears, the presumption ought to be that there was no use of personal violence or anything that would amount to criminal conduct. Our conclusion coincides with that of the trial court. We think the evidence was admissible. In *Byrd v. The State*, 68 *Ga.* 661, no property was found concealed, and apart from the confession, there was no certainty either that any had been stolen, or, if any stolen, that the article produced by the accused was part of it.

2. The motion for a new trial recites that the objection to the evidence of the declarations made by the accused, as above set out, was accompanied with the announcement by counsel for the accused that they wished to interrogate the State's witness to show that the accused had been whipped, but there is no trace of this form of coercion in any of the evidence or of any particular form whatever. The right to interrogate the State's witness on this subject, though not denied, was not exercised. We may infer that when the State's counsel declared there was no purpose to introduce confessions as such, the opposite counsel, without perhaps

conceding the admissibility of the evidence, concluded not to resist its introduction. At all events, no further objection seems to have been made, and the theory of whipping was left wholly unsupported. It has, therefore, no relevancy to the merits of the objection.

3. The money found was sufficiently identified as money which disappeared from the store when the theft was committed. The sum was a little less than the amount stolen, and the identification was more by the character of the money with reference to the material of which it was composed than by the particular characteristics of any specific piece or pieces, but taking all the circumstances into consideration the jury could have had no moral doubt of the identity of the money; and there was no deficiency of the evidence in any respect. The verdict was warranted and the refusal of a new trial was correct.　　　　　　　　*Judgment affirmed.*