## SHAW *v.* THE STATE.

1. Where a person is indicted for the offense of wrecking a railroad-train, and it is alleged in the indictment that the wrecking of such railroad-train resulted in the death of a human being, inasmuch as the law denominates such a homicide murder, it is not error for the trial judge to give in charge to the jury the law defining the offense of murder, as it is expressed in section 60 of the Penal Code.

2. Where upon the trial of such a case it was shown that the accused of his own motion undertook to, and did, point out the places at which certain tools were secreted with which the evidence indicated that the alleged wreck had been committed, it was not error for the trial judge to instruct the jury: "But if you believe from the evidence in this case, and find there was any evidence upon that question, that the defendant, without any information from any one else, pointed out the places where the tools were found, and they were the tools that were used in wrecking the train, that would be an inculpating circumstance that you might consider in this case with reference to his guilt, in connection with other evidence." The use of the word "inculpating" in the connection in which it was employed did not amount to the expression or intimation of an opinion respecting the guilt or innocence of the accused.

3. Where alibi is relied upon as a defense, and the court, after charging fully upon the evidence necessary to support that defense, charged fully the law of reasonable doubts as to the general features of the case, and that such doubts extended to every material issue in the case, it is not cause for the reversal of a judgment denying a new trial, that he failed, in the absence of a request so to do, to charge the special proposition, that if the evidence offered in support of the defense of alibi, even though insufficient to establish that as a substantive defense, when taken in connection with all the other evidence in the case was nevertheless of such a character as to leave a reasonable doubt upon their minds as to the guilt of the accused, they should acquit.

4. Where during the progress of a trial only one witness was sought to be impeached by showing that he had committed perjury, it was not error for the court, in instructing the jury upon that branch of the case, to refer to such witness by name; nor did the court err because in the course of such instructions he read to the jury the definition of the offense of perjury.

5. While, upon the request of the accused, it is the duty of the court, as far as practicable, to have the witnesses separately examined without the hearing each of the other, it is no such abuse of discretion as will be cause for the reversal of a judgment denying a new trial, that, at the request of the solicitor-general, the trial judge permitted two of the witnesses for the State to remain in the court-room to assist in the prosecution of the case.

6. The fact that subsequently to the wrecking of the train the accused told other persons where the tools with which the alleged wreck was committed were concealed is admissible in evidence against him, even though at the time he referred his own knowledge upon the subject to information

which he claimed to have derived from another; and particularly is this true where, disclaiming any personal knowledge of the whereabouts of such tools, he nevertheless undertook to, and did, point out with exact precision the places where they were alleged to have been concealed by his informant; and where, according to his own version of the transaction, it is doubtful whether the information upon which he purported to speak and act was in fact imparted to him by his alleged informant.

(a) Such declarations were admissible, not as confessions or admissions of guilt, but as sayings from which the jury might or might not make inferences unfavorable to him, as they believed his knowledge of the facts was properly referable to his own information upon the subject or to information derived from others.

(b) Nor was it error to admit in evidence a declaration made by the accused prior to the wreck for which he was indicted, while discussing with the witness another wreck which had occurred a short time before, to the effect that "he was going to have a wreck of his own some day."

7. Where it appeared that the defendant's wife was a passenger on the train which was wrecked, and that she was upon that train by his direction, it was not error to admit evidence that he had become enamoured of another female, and had made to her a proposition of marriage, which, prior thereto, had been rejected. Such evidence, though of slight consequence, is admissible as bearing upon the motive which might have induced the accused to the commission of the act.

8. Where, upon the trial of one person jointly indicted with another for a felony, that other is introduced as a witness for the person on trial, it is competent to introduce as impeaching testimony the record of his conviction.

9. Where, upon the trial of one person for a criminal offense which involves in its commission any injury to the person or property of another, other persons whose near relatives are offered as witnesses for the accused have likewise been indicted for offenses involving injury to the property of the same person, it is competent to introduce in evidence the record of proceedings against such relatives, for the purpose of showing the probable state of the witnesses' feelings relatively to the person alleged to have been injured by the accused; and this is true even though such person did not appear as prosecutor in the case.

10. The attack made upon the two jurors, who were alleged to have been disqualified because of bias, was completely answered by the countershowing on behalf of the State; and the discretion of the trial judge in holding them competent was not abused.

11. The evidence, though circumstantial, is ample to support the verdict.

12. Other than as above dealt with, there are no assignments upon errors of law alleged to have been committed at the trial which require consideration.

Argued October 14, 15,—Decided November 15, 1897.

Indictment for murder. Before Judge Smith. Twiggs superior court. April term, 1897.

*Hardeman &. Moore*, for plaintiff in error.

*J. M. Terrell, attorney-general, Tom Eason, solicitor-general, Hill, Harris & Birch* and *J. H. Martin*, contra.

ATKINSON, J.   1. The indictment upon which the plaintiff in error was tried contained two counts, in one of which he was charged with the offense of murder, and in the other with the offense of "wrecking a railroad-train, whereby death ensued." This indictment alleged in substance that the accused, conspiring with certain other persons whose names were stated therein, did upon a given day, in a named county, remove from the track of a railroad a certain iron rail, with intent to wreck the train of a certain railroad company; that in consequence of the removal of such rail, a train of the railroad company named was in fact wrecked; and that the death of a named person resulted therefrom. Upon the trial of the case the trial judge, in connection with the special statute defining the particular offense of wrecking a train, read to the jury the sections of our Penal Code defining the offense of murder; and error is assigned upon this charge, it being alleged that the offense of murder, as defined generally in the Penal Code, was not in any way involved in the present case, and that the only effect which could have been produced by giving in charge to the jury these instructions was to inflame their minds against the accused, and thus prevent them from giving proper consideration to the real questions made in the case. The section of the Penal Code defining the particular offense of wrecking a railroad-train (§ 512) provides: "Any person who shall by any device whatever wreck, or attempt to wreck, a railroad-train, locomotive, car, coach, or vehicle of any kind, when used or run on any railroad-track for the purpose of travel or transportation, or assist, or advise it to be done, shall be punished with confinement in the penitentiary for life, unless the jury trying the case shall recommend the prisoner to mercy; in that event he shall be punished by confinement in the penitentiary for not less than five nor longer than ten years. If the conviction is founded solely on circumstantial testimony, the presiding judge, without the recommendation of the jury, may in his discretion sentence the prisoner to confinement in the penitentiary for not

less than five nor longer than ten years." Section 513 pro-
vides, "If death ensues to any person from the acts mentioned
in the preceding section, the offender shall be guilty of murder."
We are now to inquire whether, upon the trial of an indict-
ment framed under this statute, the law of murder is so in-
volved as to authorize an instruction to the jury upon the gen-
eral phases of the law defining that offense. We do not think
that there can be a question that this is true. Independently
of the provisions of the sections of the Penal Code above re-
ferred to, we are fully persuaded that the act alleged to have
been committed by the accused would have been murder under
the general law. Section 67 of the Penal Code provides, "In-
voluntary manslaughter shall consist in the killing of a human
being without any intention to do so, but in the commission of
an unlawful act, or a lawful act, which probably might produce
such a consequence, in an unlawful manner: *Provided,* that
where such involuntary killing shall happen in the commission
of an unlawful act which, in its consequences, naturally tends
to destroy the life of a human being, or is committed in the
prosecution of a riotous intent, or of a crime punishable by
death or confinement in the penitentiary, the offense shall be
deemed and adjudged to be murder." Under the section of
the code last cited, if it were true that the accused had com-
mitted the acts alleged against him in the indictment, he could
have been convicted of the offense of murder without any refer-
ence to the two sections of the code first hereinabove quoted.
Section 513 only provides in express terms, that the particular
act of wrecking a train which results in the homicide of a
human being shall be murder, whereas under the old law such
a homicide would, by necessary legal inference, have been
classed as of the same grade of homicide. These several sec-
tions of the code constitute one harmonious system of penal
laws designed for the protection of human life; and we are at
a loss to understand how and in what manner a jury could
have been misled to the prejudice of the accused, when the
court gave to them such instructions only as were necessary to
enable them to pass upon the nature of the offense with which
the accused stood charged. The law denominates such an

offense murder, and we see no impropriety in the court so informing the jury, or in his instructing them as to the nature and character of acts necessary to constitute the crime of murder.

2. Error is assigned upon the following charge of the court: "But if you believe from the evidence in this case, and find there was any evidence upon that question, that the defendant, without any information from any one else, pointed out the places where the tools were found, and they were the tools that were used in wrecking the train, that would be an inculpating circumstance that you might consider in this case with reference to his guilt, in connection with other evidence." The special complaint with reference to this charge is, that the use of the word "inculpating," in the connection in which it was employed by the court, amounted to an expression or intimation of an opinion respecting the weight of the evidence touching the guilt or innocence of the accused. The conviction in the present case rested to a large extent upon circumstantial evidence. The indications at the scene of the wreck pointed to the use of a certain class of tools. The marks of a drawbar were apparent upon the cross-ties where such an instrument had evidently been used in extracting the spikes with which the rail was fastened to the trestle from which the wreck occurred. Various other tools had evidently been used in disconnecting, from other rails upon the same line of track, the rail which was displaced. The tools had disappeared and were not to be found. Subsequently the accused undertook to, and did, point out the places at which they were secreted, claiming at the time that he was acting upon information derived from another person who he said had told him where they were hidden. He disclaimed any personal information upon the subject, but nevertheless undertook the task of pointing them out. The evidence of his acts in connection with this transaction had been admitted by the court. With the admission of this testimony we shall undertake to deal hereafter, but upon this state of facts the court delivered the instruction above quoted. We find no error in this instruction, or in the use of the word "inculpating" by the court. The evidence, if admissible at all,

could not have been admitted except for the purpose of incriminating the accused; it could not have been exculpatory; the word "inculpating," used in the connection in which the court employed it, served only to characterize the purpose for which the testimony was admitted, and we can not understand how it could amount to an expression of an opinion as to its probative value in determining the guilt or innocence of the accused.

3. The accused complains that the court erred in failing to charge the jury the special proposition, that if the evidence offered in support of the defense of alibi, which he undertook to set up, even though insufficient to establish that as a substantive defense, when taken in connection with all the other evidence in the case was nevertheless of such a character as to leave a reasonable doubt upon their minds as to the guilt of the accused, they should acquit.   As one of his theories of defense the accused had relied upon, and attempted to establish, an alibi.   No special request was made to the court to charge the particular proposition hereinbefore announced.   In reading the instructions of the judge to the jury, which come to us certified in the record, we find that the court charged the jury fully upon the evidence necessary to support that as a defense. He charged fully the law of reasonable doubts as to the general features of the case, and that such doubts extended to every material issue in the case, and that if, upon the entire evidence as submitted, the jury had upon their minds a reasonable doubt as to the guilt of the accused, they should acquit.   The reasonable doubt which extended to every feature of the case, as stated by the court, embraced and comprehended of necessity the evidence introduced upon the defense of alibi; and we think that a mere omission of the court, in the absence of a special request so to do, to charge the jury the special proposition touching the effect of the evidence introduced in support of the defense of alibi, in its bearing upon the whole case, which proposition is above stated, affords no ground for the reversal of a judgment denying to the accused a new trial after his conviction.   If no reference had been made to the defense of alibi, a different case would have been presented; but we are fully persuaded that if counsel desired the special instructions for a failure to give

which he now complains, either a request therefor should have been submitted, or the attention of the court directed to the omission.

4. During the progress of the trial an attempt was made to impeach one of the witnesses introduced by the defense, by showing·that he had committed the offense of perjury.   During the course of his instructions to the jury, the trial judge referred to this witness by name, and in charging upon the subject of impeachment, read to the jury the definition of the offense of perjury as stated in the Penal Code.   Error was assigned upon these instructions.   While it is never a proper practice for the trial judge, in the course of his instructions to the jury, to make laudatory or disparaging remarks to or of a witness sworn in the case, we see no impropriety in the conduct of the trial judge upon this occasion.   Only one witness was sought to be impeached by showing that he had committed perjury ; and it was entirely proper for the judge, in designating this witness by name, to confine to him that portion of the instructions given to the jury which related to the impeachment of witnesses by proof of perjury.   This witness had been sworn upon a former trial of the same case, and swore upon the present trial in direct opposition to what he swore before.   It was for the jury to say in which of the two instances, in their judgment, he had sworn falsely ; and in order for them intelligently to pass upon the degree of culpability which should attach to him as a witness from the contradictory statements he had made, it was eminently proper that the judge should read to them the definition of the offense of perjury.   Without a knowledge of this definition they could not answer intelligently the question whether the witness had in fact committed perjury.   With that definition before them, they could apply the facts to it, and reach a proper conclusion as to the degree of credit which should attach to his testimony.   There was certainly no error in giving to the jury this instruction.

5. Before the introduction of the testimony commenced, the accused requested that the witnesses on behalf of the State should be separated, to the end that they might be examined each without the hearing of the other ; but, upon the request

of the solicitor-general, the trial judge permitted two of the witnesses for the State to remain in the court-room to assist in the prosecution of the case. To this the accused objected, and assigned error upon the refusal of the trial judge to exclude from the court-room all of the witnesses, including the two who were permitted to remain. While section 5280 of the Civil Code seems to confer upon either party the right to have the witnesses of the other examined out of the hearing of each other, and directs that the court shall take proper care to effect this object so far as practicable and convenient, yet this court has ruled that this matter is within the discretion of the trial judge, and has refused to reverse a ruling permitting one or more of the witnesses for the respective parties to remain to assist counsel in the trial of the case. *City Bank of Macon* v. *Kent*, 57 *Ga.* 285; *Central Railroad Co.* v. *Phillips*, 91 *Ga.* 526; *Keller* v. *State*, anté, 506. The absolute exclusion of all witnesses might, in some cases, result in great hardship to one or other of the parties; and the tendency of the decisions of this court has been to leave such matters, to a great extent, within the discretion of the trial judge. It is not to be understood by these expressions that trial judges are at liberty to ignore the positive right established by statute; but this court will presume that in the administration of what, for the want of a better term, may be called their "police" power, the trial judges will exercise such power with due reference to the rights of the parties, and with a view to ultimately administering substantial justice There was no abuse of this discretion in the present case; and hence we can not find that the court erred in permitting the two witnesses to remain. As has been heretofore suggested, however, by this court, the better and the safer practice is for the trial judge to require witnesses, so permitted to remain, to be first examined.

6. In discussing the charge of the court referred to in the second headnote which precedes this opinion, we have stated substantially the facts bearing upon the conduct of the accused in undertaking to point out the places where the tools with which the alleged wreck was committed had been concealed. We are now to consider whether the sayings of the accused

were admissible in evidence.    As will be noted, he was on trial
for the offense of wrecking a railroad-train.    A railroad-train
had been wrecked at the time and place stated in the indict-
ment.    Without any apparent solicitation from other persons,
the accused, upon information which he claimed to have de-
rived from one who was charged as an accomplice with him in
the commission of the act, undertook to point out the places
where the tools with which the alleged wreck had been com-
mitted were concealed.    He disclaimed any personal knowledge
whatever of the transaction, and yet undertook to point out cer-
tain places in the adjacent woods at which the tools were hid-
den.    We think this testimony was admissible, not as confes-
sions, because they did not profess to be an admission by him
that he had committed the criminal act; they were not admis-
sions of guilt, but they were admissible as sayings which indi-
cated an intimate acquaintance upon his part with the minute
circumstances connected with the perpetration of the criminal
act.    They were properly admitted as tending to show that he
knew too much about the transaction to be speaking upon in-
formation and belief only.    They shed light upon the source
of his information.    He knew the facts; the inquiry was, from
what source did he derive his information?    Did he derive it
from the alleged accomplice, or did the nature of his disclosures
indicate that his minute and circumstantial acquaintance with
the pregnant fact of the place of concealment of these secreted
implements showed a personal knowledge upon his part of the
criminal transaction itself?    See *Rusher* v. *State*, 94 *Ga.* 363.
It seems further, that some time prior to the wreck for which
the accused was indicted, while discussing another wreck which
occurred upon the same railroad but at a different point, the
accused made use of the expression that "he was going to have
a wreck of his own some day."    Objection was made to the in-
troduction, on behalf of the State, of this saying, upon the
ground that it was irrelevant.    We do not think this testimony
was wholly irrelevant.    The saying might have been the idle
vaporing of a boastful man speaking without thought of its real
weight or significance, or it might have served to indicate that
even at that time the mind of the accused was directed toward

railroad-wrecking. Its weight was a matter entirely for the jury. If it were simply an idle remark, or there was a hidden significance behind it, it was for the jury to say. Standing alone, it probably would not have been admissible in evidence, but connected as it was with the other circumstances pointing toward the guilt of the accused, we think it was competent.

7. Evidence had been introduced showing that the accused was a married man, that some time previously to the time when the wreck for which he was indicted was committed he had resided in the neighborhood where it occurred, his wife residing in an adjoining county, and that a short time before it occurred his wife had come to reside with him. Upon the day on which the homicide occurred, the wife was visiting in a neighboring city; and though there were two railroads by either of which she could have reached home, it was shown that by direction of the husband she came home upon the train which was afterwards wrecked. Upon the same train with his wife was a friend of hers, and likewise the father of the accused. The latter left the train at an intermediate station. The theory of the State was, that the accused had wrecked the train with the purpose to bring about the death of his wife. It seems that, prior to the time his wife came to live with him, the accused had become enamoured of another female residing in the same community; had paid his addresses to her with a view of procuring her consent to become his wife. His overtures, however, had been rejected; and the State advanced as one of its theories that he desired to compass the death of his own wife to enable him more successfully to prosecute his suit for the hand of the young woman by whom he had been rejected. The State offered to prove these facts in support of its theory, and the testimony offered was objected to upon the ground that it was wholly irrelevant. The objection was overruled and the testimony admitted. Error is assigned upon this ruling. As bearing upon the question of motive, we think this testimony was relevant, and therefore competent. In showing motive, it is not infrequently necessary to prove collateral facts from which the jury may or may not infer a sinister or criminal motive as against a person accused of, and who has been shown either by

direct or circumstantial evidence to have participated in the commission of an offense. An authority for the admission of the class of evidence which was offered and received in this case is to be found in Gillett on Indirect and Collateral Evidence, § 59. The text of the section above cited states the law as follows: "It has been held competent in a number of cases, where defendants have been on trial for uxoricide, to show their criminal relations with other women, in order to rebut the natural presumption against a husband committing such a crime, by showing the alienation of his affections and to suggest a possible reason for his desiring his consort's death." See also cases there cited, in one of which it is held, "The fact as to the existence of a criminal intimacy between the defendant and the wife of the deceased at the time of the killing is competent to show motive." While this testimony may have been of slight probative value, we think it was entirely competent, its credit being a matter for the jury.

8. One Criswell, who had been jointly indicted with the accused, and who had previously been convicted, was offered as a witness on his behalf. The State offered in evidence, for the purpose of impeaching him, an exemplification of the record of his conviction. This testimony was objected to, upon the ground that it was irrelevant, and that it was not competent by this means to impeach the witness. This objection was overruled and the testimony admitted, and upon its admission error is assigned. Under our law as it now stands, conviction of crime does not affect the competency of a witness, but the evidence of his conviction either of felony or larceny is admissible to affect his credit in all instances in which, under the rules of the common law, the witness would have been held to have been incompetent. At common law insensibility to the obligation of an oath was held to follow conviction of an offense which rendered one infamous, and extended to all those persons who had been guilty of heinous crimes which men generally are not found to commit unless they are so far depraved as to be wholly unworthy of credit for truth. Mr. Greenleaf says: "The basis of the rule seems to be, that such a person is morally too corrupt to be trusted to testify; so reckless of the

distinction between truth and falsehood, and insensible to the restraining force of an oath, as to render it extremely improbable that he will speak the truth at all. Of such a person Chief Baron Gilbert remarks, that the credit of his oath is overbalanced by the stain of his iniquity." (1 Gr. Ev. § 372.) The same authority says, "It is a point of no small difficulty to determine precisely the crimes which render the perpetrator thus infamous. The rule is justly stated to require, that 'the *publicum judicium* must be upon an offence, implying such a dereliction of moral principle as carries with it a conclusion of a total disregard to the obligation of an oath.' But the difficulty lies in the specification of those offences. The usual and more general enumeration is, *treason, felony*, and the *crimen falsi.*" Following these suggestions of the common law, this court held that larceny was included within the class of offenses embraced within the general term "the *crimen falsi.*" *Georgia Railroad* v. *Homer*, 73 *Ga.* 251. "The fact that a witness has been convicted of a crime involving moral turpitude is admissible for the purpose of discrediting his evidence." *Ford* v. *State*, 92 *Ga.* 459. The principle above announced was followed in the case of *Coleman* v. *State*, 94 *Ga.* 85, where all of the cases bearing upon the same subject are cited. Under our decisions, then, the record of a conviction of the offense of larceny is admissible in evidence to discredit such witness, because such a conviction renders one *infamous*, within the common-law rule. If this be true, *felony* and *treason* being both expressly included within the class of offenses which were pronounced *infamous*, and the witness having been convicted of a felony, the record of his conviction, while not sufficient to exclude him as a witness, was properly admitted by the trial judge to affect his credit.

9. The railroad company, the property of which was destroyed in consequence of this wreck, was not the prosecutor in the present case. Upon the trial of the accused, certain witnesses were offered to testify on his behalf. It seems that certain near relatives of these witnesses had previously been indicted for the offense of breaking into the cars of the same railroad company. Upon the trial the State offered in evidence, as

affecting the credit of these witnesses, the record of the proceedings instituted against their relatives. Objection was made, upon the ground that such testimony was irrelevant, and upon the further ground that it was not thus competent to discredit the witnesses offered. We think the testimony was competent. Its probative value was for the jury. It had a tendency to throw light upon the state of feeling existing upon the part of these witnesses toward the railroad company. In all judicial investigations, the state of a witness's feeling to the parties, and his relationship, may always be proved for the consideration of the jury. Civil Code, § 5289. While it is true the railroad company was not, upon the face of the record, a formal party to this proceeding, yet its property had been injured and destroyed in consequence of the alleged wrongful act of the accused. It was actively aiding the State in the prosecution. Other of its property rights had, as alleged, been invaded by the relatives of these witnesses. It was for the jury to say whether the circumstance of the relationship of the witnesses offered on behalf of the accused to these other persons, and the circumstance of their having been indicted for previous criminal trespasses committed upon the property of the railroad company, showed a state of feeling existing between the witnesses and the company of such a character as was likely to prejudice and color their statements when they came to testify in favor of the accused.

10. Certain of the jurors were attacked after verdict, upon the ground that they were disqualified from bias to act as jurors upon the trial of the case. To the affidavits filed upon the part of the accused the jurors made a complete reply, and vindicated their competency to serve by an overwhelming weight of testimony; and the trial judge having found in favor of their competency, his discretion in refusing to set aside the verdict upon that ground will not be controlled.

11. The verdict in the present case rests upon circumstantial evidence. We have patiently and with painful labor studied, line by line, the testimony certified and transmitted in the voluminous record which comes to us in this case. Conscious that sometimes juries, and even trial judges, are swept away

by the overwhelming enormity of an offense, and that thus they may be sometimes unconsciously betrayed into sanctioning the conviction of an innocent man, we have given the testimony a most careful consideration, and reach the conclusion that the conviction of the accused was fully warranted. It would be needless to state here this volume of evidence. It could serve no good purpose in the future; for doubtless no case of homicide committed under like circumstances will ever again arise, certainly none which can approach it in the heinousness of its conception or in the brutality of its execution. Whatever may have influenced the accused to its commission, it marks him as a man with an abandoned and malignant heart. That he escaped the gallows he may well rejoice. The long years which lie before him give him the opportunity for meditation which we trust he will profitably employ. Let the judgment of the court below be

　　　　　*Affirmed. All the Justices concurring.*