## 35420.   TYLER *v.* THE STATE.

Decided November 12, 1954.

*James R. Venable,* for plaintiff in error.
*Paul Webb, Solicitor-General, Charlie O. Murphy,* contra.

TOWNSEND, J. ■ ■ Special grounds 4 and 8 complain of certain statements and instructions of the court as being improper and prejudicial to the defendant's case. During the trial, counsel for the defendant moved for a mistrial because an answer of a witness to the solicitor's question, to the effect that he had previously made an identification in the courtroom, indicated that the defendant had been previously tried. The solicitor withdrew his question after some discussion of the point between the court and the attorneys, and the court then said: "And that is where the witness said that he saw him in the courtroom, is that right? and I ruled it out, and you withdrew the question and I ruled out the answer," and then the court instructed the jury, "You will not consider that evidence that was ruled out in making up your verdict," and denied the motion for a mistrial. Statements of the court in rulings on objections to testimony do not usually amount to expressions of opinion (see *Daniels* v. *Avery,* 167 *Ga.* 54 (3c), 145 S. E. 45), nor are statements made during argument of such objections in colloquy between court and counsel. *Sanders* v. *State,* 66 *Ga. App.* 128 (17 S. E. 2d 251); *Oglesby* v. *State,* 73 *Ga. App.* 703, 707 (37 S. E. 2d 837). Here the trial court only repeated the objectionable evidence ruled out by him in order to identify it in connection with his instructions to the jury to disregard it. This was not improper or prejudicial. This ground is without merit.

■ Special ground 8 contends that the court intimated the defendant was guilty because of the charge: "When you have done that, when you have written your verdict of guilty and when you have fixed the punishment according to statute," the jury would then have a right to recommend a misdemeanor pun-

ishment. The particular complaint is that the word "when" where used in the charge intimated an opinion that the jury should return a verdict of guilty, and amounted to a recommendation by the trial court of such verdict. The court also properly instructed the jury as to the form of the verdict in the event the defendant was found not guilty. Whether or not an excerpt from a charge constitutes an expression of opinion must be determined from the charge as a whole; and where the court has fully instructed as to the forms of verdict applicable to both acquittal and conviction, it is not error, in connection with the latter form, to instruct that, "when" or "after" they have found such verdict of guilty, they may go further and recommend misdemeanor punishment. This question is controlled by *Usry* v. *State,* 90 *Ga. App.* 644 (83 S. E. 2d 843).

■ In special ground 5, error is assigned on a portion of the charge relating to impeachment: "The credit to be given to a witness' testimony where impeached for general bad character is for the jury to determine. . . One of the methods by which a witness may be impeached is by evidence as to his general bad character, that is to say, by evidence showing his conviction for an offense or offenses involving moral turpitude", the objection being that "no evidence of general bad character was introduced as to either witness, but each was impeached on the ground of having been convicted of a crime involving moral turpitude, of contradictory statements of the witness Baugh . . . and contradictory statements of the witness Harrison . . . and said charge was not adjusted to the evidence and misled and confused the jury as to whether they should disregard the testimony." Code § 38-1804 authorizes the impeachment of a witness by evidence as to his general bad character, and sets forth the manner in which the impeaching witness may testify as to the bad character of the accused. It is also proper to impeach the witness by the introduction in evidence of certified copies of the record of conviction of a witness for a crime involving moral turpitude. *Coleman* v. *State,* 94 *Ga.* 85 (1) (21 S. E. 124). At common law such a conviction automatically rendered the witness incompetent to testify, on the ground that he was guilty of a crime "which men generally are not found to commit unless they are so far depraved as to

be wholly unworthy of credit for truth," and thus rendered infamous. *Shaw* v. *State,* 102 *Ga.* 660, 670 (29 S. E. 477). An infamous person is a person of bad character. The court correctly left the question of whether or not the witnesses' testimony had been discredited by proof of their former convictions for jury determination. No error harmful to the movant appears from the charge relating to impeachment.

■ Error is predicated in special ground 7 on the charge of the court that flight of the defendant, unexplained, may authorize an inference of guilt, flight being subject to explanation, and it being a question for jury determination whether or not there was a flight, and, if so, whether it was from a sense of guilt or some other reason. It is contended that such charge was without evidence to support it. However, it appears from the evidence that the burglary was committed in 1947, that immediately thereafter the defendant disappeared, that police officers arrested the other white man contended to have engaged in the burglary with the defendant the following day and also searched for the defendant; that they had information he had been in Atlanta, but were unable to locate him, and that they continued to search for him until 1952 when he was found and arrested in Oregon and returned to this State. This evidence was sufficient to authorize a charge on the subject of flight, unexplained, as a circumstance to show guilt. *Lancaster* v. *State,* 168 *Ga.* 470 (6) (148 S. E. 139). This ground is without merit.

■ Special ground 6 complains that the court erred in charging on the subject of conspiracy because there was no evidence to warrant such charge, and this ground will be considered in connection with the general grounds of the motion for new trial. The State contended that the defendant and three others burglarized the place of business of the Peerless Furniture Company; that the store was entered and a safe was attempted to be broken into, but that the attempt was unsuccessful, and the offenders left without accomplishing their objective. In support of this contention, J. J. Hart testified that, at about 7 p. m. on August 20, 1947, he passed the vicinity of the store on his way home to supper and noticed a 1941 maroon Ford with two colored men and two white men in it, parked on Marietta Street. He identified the defendant as one of the men in the car. About

30 minutes later, he returned from work and saw the same car, parked about a block away, with two white men and one colored man in it, and saw the other colored man going down an alleyway with something under his arm wrapped in paper, and that the car had a Texas license. He wrote down the tag number and notified the police. An employee of the company testified that he was called back to the store around 8 p. m., and found the lock and hasp prized off the facing of the back door, and some pieces taken off the fence. When the automobile was subsequently located, it had a Georgia tag on it, established as having been stolen from the automobile of another witness between 4 p. m. and 1 a. m. of the day in question; in this automobile was found a Texas license tag. Jack Baugh testified that he, Tyler, and Chastain had discussed the burglary; that Chastain thought the defendant should go in with him because someone there might recognize Chastain; that either Chastain or Tyler went with him; that he thought that Chastain was waiting for them in the car when they returned; that he took a screw driver and prized off the lock; that they found it was a Mosler or niggerhead safe, hard to open, and returned to the car and informed the other men what they had run into.

Willie Joe Harrison, named by Baugh as the fourth man in the automobile, testified that he, Baugh, Chastain, and the defendant had made trips to Texas together; and that he was in the automobile in question when it was parked in front of the alley with Baugh, Chastain, and another white man. He refused to identify Tyler positively as the other man, but it appeared that he had previously identified him positively; on the trial he contended that he resembled the man Tyler, and that he had previously stated there was a resemblance. He did remember and identify the witness who had seen the four men parked in the automobile, and had notified the police to that effect. He testified that he and the other white man stayed in the car, that Baugh and Chastain went down the alley; that when they came back one of them said, "It is a niggerhead." The testimony of the witnesses was contradictory in some respects, both as to the time of the occurrence and the streets on which the automobile was parked. The testimony of Baugh and Harrison differed as to who had driven the car and who had sat in the back, and

92

their testimony also differed in some respects from statements previously made by them. Nevertheless, the positive testimony of Baugh that he and Tyler had conspired to effect the burglary was corroborated in its essential details by the identification of Tyler by the passerby as one of the men in the maroon Ford at the time of the burglary, in which car both Baugh and Harrison admitted they were in the company of two white men, one of whom was the defendant according to Baugh, and resembled the defendant according to Harrison; the confession of Baugh that he in the company of one of the white men entered the building and reported to those remaining in the automobile that it was a "niggerhead"; the recollection of Harrison that one of the men, on returning, said it was a "niggerhead"; the identification of the maroon Ford, and finding therein the Texas license plate, as reported by the first witness; the proof that the building had been entered in the manner described by Harrison, and that the safe within was the type safe described by Baugh, taken together, supported the testimony of an accomplice with sufficient corroborative detail to warrant the conviction. The same testimony, of course, authorized the finding that the burglary was a result of a conspiracy in which Baugh, Harrison, and the defendant were coconspirators, since there is no view of the evidence under which the defendant could have been guilty otherwise than in conjunction with the other occupants of the automobile. The court therefore properly charged on the subject of conspiracy, and also properly overruled the motion for new trial on the general grounds.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*